## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **LORMET COMMUNITY FEDERAL** | ) | |
| **CREDIT UNION** | ) | |
| 2051 Cooper-Foster Park Road | ) | CASE NO. |
| Amherst, OH 44001 | ) | |
| | ) | JUDGE: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **VAUGHN'S AUTO REPAIR & 24** | ) | **COMPLAINT** |
| **HOUR TOWING, LLC** | ) | |
| 8941 Leavitt Road | ) | |
| Amherst, OH 44001 | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| **CITY OF OBERLIN** | ) | |
| 85 South Main Street | ) | |
| Oberlin, OH 4407 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff LorMet Community Federal Credit Union ("LorMet" or "Plaintiff"), by its attorneys, for its complaint against Defendants Vaughn's Auto Repair & 24 Hour Towing, LLC ("Vaughn's Towing") and the City of Oberlin ("Oberlin" or the "City," and together with Vaughn's Towing, "Defendants"), alleges as follows:

### INTRODUCTION

1.      This case challenges and seeks to remedy Defendants' violations of LorMet's fundamental, constitutional rights, including its rights to Due Process of law and to be free from unreasonable seizures.  Under Defendants' policies and practices, and the facially unconstitutional

statutory scheme purportedly sanctioning such policies and practices, motor vehicles subject to duly perfected security interests and liens are seized, detained without warrant or exception of the warrant requirement, and held without constitutionally adequate notice or a hearing to determine the propriety of the seizure, the propriety of continued detention, or the propriety of any conditions placed on the vehicle's release, including the reasonableness of any towing and storage fees. Instead of providing notice and a hearing to lienholders like LorMet, Defendants' policy and practice is to send out a letter, months after the unlawful seizure, threatening to dispose of the vehicle thereby extinguishing the lienholder's lien and property interest, unless the lienholder pays unreasonable and excessive towing and storage charges that continue to accrue daily as a result of Defendants' own failure to timely notify lienholders and/or promptly release unlawfully detained vehicles.  These policies and practices, and the statutory scheme on which Defendants rely to further those policies and practices, violate the Fourth and Fourteenth Amendments to the U.S. Constitution.

2.     It is well established that a duly perfected security interest and lien in a vehicle is a constitutionally protected property right.

3.     As of December 2022, the total amount of auto loan debt in the United States is $1.52 trillion, and auto loans account for approximately 9% of all U.S. consumer debt.[1] Approximately 44% of Ohio consumers have outstanding auto loans,[2] the vast majority of which are backed by security interests and liens in the financed vehicle.

4.     LorMet, a federally chartered community credit union, and Defendants are located

---

[1] Federal Reserve Bank of N.Y., *Quarterly Report on Household Debt and Credit* (Feb. 2023), at https://www.newyorkfed.org/medialibrary/interactives/householdcredit/data/pdf/HHDC_2022Q4.

[2] CFPB, *Consumer Finances in Rural Appalachia: Data Point* (Sept. 2022), https://files.consumerfinance.gov/f/documents/cfpb_consumer-finances-in-rural-appalachia_report_2022-09.pdf.

in Lorain County, Ohio, which has a population of approximately 315,000 people.  Most of LorMet's members reside in Lorain County, and LorMet has a $140,000,000 portfolio of automobile loans collateralized by duly perfected valid security interests and liens in the financed vehicles.  These interests constitute constitutionally protected property rights.

5.     Defendants' policies and practices, and the statutes purportedly sanctioning those policies and practices, have harmed, threaten, and will continue to harm those constitutionally protected property rights.

6.     The harm to LorMet (and to all other holders of liens in vehicles located in Ohio) is not hypothetical.  Recently, Defendants summarily deprived LorMet of its rights in a 2018 Jeep Renegade, Vehicle Identification Number ZACCJABBBXJPG8872 (the "Vehicle"), when Oberlin, pursuant to its police powers, detained the Vehicle without notice to LorMet and without a warrant or exception to the warrant requirement.  Defendants then threatened to dispose of the Vehicle and extinguish LorMet's lien unless LorMet paid unreasonable and excessive towing and daily storage fees at a rate of ***nearly three times*** the ***maximum*** amounts established by the Ohio Public Utilities Commission ("PUCO") that continuously accrued directly as a result of Defendants' failure to promptly notify LorMet of the Vehicle's impoundment and subsequent refusal to release the Vehicle or provide any information as requested by LorMet.  Defendants, as is their policy and practice, did not provide constitutionally adequate notice and a hearing with respect to the legitimacy of these actions, either before or after they occurred.

7.     On or about December 2, 2022, Oberlin, through its police department ("PD"), seized the Vehicle, for an alleged violation of City of Oberlin Ordinance § 303.09, which prohibits "willfully leaving vehicles on private or public property" and, on information and belief, directed Vaughn's Towing to tow the Vehicle and detain it on its premises since December 2, 2022.

8.     City of Oberlin Ordinance 303.08 sets forth a procedure for redemption of a vehicle impounded under that provision.  The ordinance is unconstitutional on its face because it fails to require that the holder of a duly perfected security interest and lien in a vehicle be given notice and an opportunity to be heard and protect its rights, and it therefore authorizes seizure and detention without a warrant or exception to the warrant requirement, as well as the sale and concomitant destruction of the property interests of the secured party holding a recorded lien against the affected vehicle (by extinguishing the lien) without any notice to such lienholder or any opportunity to be heard.

9.     Similarly, Ohio Revised Code ("O.R.C") § 4513.61 authorizes a sheriff or chief of police to "order into storage any motor vehicle" under certain enumerated circumstances. Although O.R.C. § 4513.61 requires the sheriff or chief of police to "cause a search" to be made of records to ascertain the identity of a lienholder within five days of the vehicle's seizure, the statute does not set any deadline by when the sheriff or chief of police must ***notify*** a lienholder of the seizure.  As such, O.R.C. § 4513.61 effectively sanctions Defendants' policy and practice of waiting ***months*** before notifying lienholders that a vehicle has been seized, which jeopardizes the lienholder's security interest and causes the lienholder to incur liability for or loss due to the continued accrual and imposition of unreasonable, excessive and uncapped storage charges that accrue daily.  As such, O.R.C. § 4513.61 is unconstitutional on its face and as applied to Defendants' actions against LorMet's interest in the Vehicle.

10.    In addition, O.R.C. § 4513.61 does not require that a the holder of a duly perfected security interest and lien in a vehicle be given constitutionally adequate notice and an opportunity to be heard and protect its rights either before or after the seizure of a vehicle in which it holds an interest or before or after the imposition of unreasonable, excessive, and uncapped towing and

storage charges. Therefore, O.R.C. § 4513.61 authorizes seizure and detention without a warrant or exception to the warrant requirement, as well as the sale and concomitant destruction of the property interests of the secured party holding a recorded lien against the affected vehicle (by extinguishing the lien) and the demand for payment of unreasonable, excessive, and uncapped towing and storage fees such as those charged by Vaughn's Towing without any constitutionally adequate notice to the lienholder or any opportunity to be heard as to any issue related to the impoundment, including the reasonableness of towing and storage fees. O.R.C. § 4513.61 is unconstitutional on its face and as applied to Defendants' actions against LorMet's interest in the Vehicle for these reasons as well.

11. Even though the Vehicle was seized on December 2, 2022, neither Oberlin nor anyone else notified LorMet that the Vehicle had been detained or could be recovered until February 2, 2023—*two months after the Vehicle was detained*—when LorMet received a letter from the Oberlin Police Department. The letter, which was dated January 31, 2023, did not provide constitutionally adequate notice of a hearing, but instead, threatened to dispose of the Vehicle and extinguish LorMet's duly perfected security interest and lien unless LorMet pays all towing and daily storage fees charged by Vaughn's Towing.

12. Prior to February 2, 2023, LorMet did not know, and had no way of knowing, that the Vehicle had been seized and was being detained, or that daily storage fees were continuously accruing.

13. Immediately after receiving the letter threatening to extinguish LorMet's interest unless it paid the towing and storage fees, LorMet contacted Vaughn's Towing to recover the Vehicle, yet Vaughn's Towing, as is its policy and practice, refused to release the Vehicle without further direction from Oberlin.

5

14. LorMet attempted to contact the Oberlin Police Department multiple times between February 2 and February 10, 2023, but Oberlin, as is its policy and practice, refused to instruct Vaughn's Towing to immediately release the Vehicle or to provide any information to LorMet, which caused additional daily storage fees in amounts far exceeding those established by PUCO to continue to accrue, thereby further diminishing the total value of LorMet's security interest in the Vehicle and threatening to extinguish it.

15. In light of Defendants' refusal to release the Vehicle to LorMet despite having no legitimate reason for detaining it, LorMet sought and obtained a court order in the criminal proceedings against the owner of the Vehicle, which directed Vaughn's Towing to release the Vehicle but only if LorMet paid its unreasonable and excessive towing fees. Specifically, Vaughn's Towing refused to release the Vehicle unless LorMet agreed to pay a total of $4,875 in fees ($50 per day and a $375 tow fee) that supposedly accrued daily when LorMet had not been informed of the seizure and between February 2 and March 10, 2023, when Vaughn's Towing refused to release the Vehicle to LorMet.

16. The summary deprivation of LorMet's property interest occurred in furtherance of Defendants' standard practices for taking custody of vehicles as part of an arrest or investigation and as part of Defendants' standard practice for detaining, towing, storing, and disposing of vehicles.

17. Defendants violated LorMet's right to procedural Due Process because Oberlin has no procedure for a person who holds a security interest or lien in a seized vehicle to be afforded the opportunity for a hearing before an impartial decision-maker with constitutionally adequate notice so that the lienholder can protect its interest by challenging the seizure, detention, or disposal of the impounded vehicle and/or the reasonableness of the towing and storage fees.

18.     Defendants violated LorMet's rights to be free from unreasonable seizures and to procedural Due Process when they failed to promptly notify LorMet of the initial seizure of the Vehicle, failed to promptly notify LorMet that the Vehicle was detained, and when they continued to detain, refused to release, and threatened to dispose of the Vehicle unless LorMet paid the unreasonable, excessive fees demanded by Vaughn's Towing, and by failing to provide to LorMet constitutionally adequate notice of procedures for the recovery of the Vehicle or protection of its property interests in the Vehicle.

19.     Therefore, pursuant to 42 U.S.C. §§ 1983 and 1988, LorMet seeks declaratory and injunctive relief, as well as damages, to stop and remedy Defendants' unlawful, unnecessary, and harmful conduct, which will cause irreparable injury to LorMet and all other lienholders with security interests in vehicles located and/or seized, towed and stored in Lorain County and throughout Ohio.

## PARTIES

20.     LorMet is a federally chartered, insured, and regulated community credit union pursuant to 12 U.S.C. § 1751 with a principal place of business at 2051 Cooper-Foster Park Road, Amherst, Lorain County, Ohio 44001.  LorMet is the holder of a duly perfected security interest in the Vehicle.   LorMet's regular business includes providing financing for the purchase of vehicles.

21.     Defendant Oberlin is an Ohio municipal corporation under Article XVIII of the Ohio Constitution and Title VII of the Ohio Revised Code.

22.     On information and belief, Defendant Vaughn's Towing is a limited liability company with its principal place of business at 8941 Leavitt Road, Amherst, Lorain County, Ohio 44001.

23.     On information and belief, Oberlin contracts with Vaughn's Towing to tow and store impounded vehicles on Oberlin's behalf and at the direction of Oberlin and/or the Oberlin Police Department.

## JURISDICTION AND VENUE

24.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over the claims arising under the laws of the United States.

25.     This Court has supplemental jurisdiction over the remaining claims in this complaint pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

26.     Venue is proper in the Eastern Division of the Northern District of Ohio pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

**A.      Defendants Have Deprived and Continue to Deprive LorMet of its Rights in the Vehicle.**

27.     LorMet is a lienholder who holds security interests in a number of automobiles in Oberlin and throughout Lorain County, Ohio, including a duly perfected security interest in the Vehicle.

28.     Pursuant to a Loan and Security Agreement dated July 1, 2019, LorMet holds a security interest in the Vehicle.

29.     The Ohio Certificate of Title for the Vehicle reflects LorMet's status as a "lienholder" in the Vehicle.

30.     On or about December 2, 2022, Oberlin seized the Vehicle pursuant to Oberlin's police officers acting in the course of their duties as law enforcement officers.

31.     On or about December 2, 2022, Oberlin, pursuant to laws enacted to further official state interests, directed Vaughn's Towing to tow the Vehicle and store it on its premises.

32.     Two months later, on or about February 2, 2023, LorMet received a letter from the Oberlin PD dated January 31, 2023, which advised LorMet that the Vehicle "has been left willfully on private or public property in violation of City of Oberlin Ordinance 303.09" and "was towed by and may be retrieved at Vaughn's Towing …."

33.     Vaughn's Towing acted at Oberlin's direction, and only through the authority granted by Oberlin.

34.     The Oberlin PD Letter failed to specify whether the Vehicle was "left" on "public" or "private property."  It is therefore unclear if Vaughn's Towing, on behalf of Oberlin, towed the Vehicle pursuant to O.R.C. § 4513.60 or § 4513.61.

35.     Prior to receiving the Oberlin PD Letter, LorMet did not know, and had no reason to know, that the Vehicle had been towed or impounded.

36.     The Oberlin PD Letter states that the "lien holder [sic] of the motor vehicle may reclaim same upon payment of expenses incurred in its removal and storage along with presentation of ownership which may be evidenced by a certificate of title and/or registration to the vehicle."  The Letter provided no notice of a hearing, and no hearing occurred, on whether these demands were proper in the first instance.

37.     Neither the Oberlin PD nor its agent, Vaughn's Towing, notified LorMet that fees for storage of the Vehicle were accruing, and had been accruing since on or about December 2, 2022.

38.     On February 2, 2023, LorMet called Vaughn's Towing to inquire about the Vehicle and its release.

9

39.    On February 7, 2023, Vaughn's Towing sent LorMet photographs of the Vehicle and advised LorMet that it was unsure if it could release the Vehicle to LorMet without Oberlin's direction, thus refusing to release the Vehicle to LorMet.

40.    On the same day, LorMet and LorMet's counsel contacted the Oberlin PD to ascertain the status of the Vehicle and inquire as to why Vaughn's Towing refused to release the Vehicle to LorMet.

41.    Representatives of the Oberlin PD advised LorMet and its counsel that they "were busy" and would call LorMet back with more information.

42.    The Oberlin PD never called LorMet back or otherwise contacted LorMet again with respect to the Vehicle.

43.    In light of Vaughn's Towing's refusal to release the Vehicle and the Oberlin PD's failure to provide additional information, on February 10, 2023, LorMet filed a Motion to Release the Vehicle with the Lorain County Court of Common Pleas in the criminal case against the owner of the Vehicle, Lorain County Court of Common Pleas Case No. 22-CR-107925.

44.    On March 2, 2023, LorMet filed an Agreed Order in Case No. 22-CR-107925 granting the Motion to Release and ordering the release of the Vehicle upon LorMet's payment of the towing and storage fees to Vaughn's Towing.

45.    At the time LorMet filed the Agreed Order, it did not know—and could not reasonably anticipate—that Vaughn's Towing would demand towing and storage fees that far exceed those established under O.R.C. § 4921.25 in order to release the Vehicle.

46.    After filing the Agreed Order, LorMet contacted Vaughn's Towing to inquire as to the amount of towing and storage fees owed.

47.    Vaughn's Towing advised LorMet that it would charge LorMet a total of $4,875,

or $50 per day for storage and a $375 tow fee.

48.     The maximum fees set by PUCO are $17.00 for storage per day, and $129.00 for towing a vehicle.  *See* Ohio Administrative Code ("OAC") §§ 4901:2-24-03(A)(1) and (B)(1).

49.     On March 9, 2023, LorMet filed a Motion for Immediate Release of Vehicle in Lorain County Court of Common Pleas Case No. 22-CR-107925, seeking an order for the Vehicle to be immediately released without payment of fees.

50.     On or about March 15, 2023—after LorMet again pursued relief in the form of a court order—the Lorain County Court of Common Pleas ordered that the Vehicle be released.  To date, Vaughn's Towing continues to refuse to release the Vehicle unless LorMet agrees to its unreasonably excessive storage and towing fees, which accrued throughout the period when LorMet had no notice that the Vehicle was being held, after Vaughn's Towing refused to release the Vehicle, and during the time the Oberlin PD refused to respond to LorMet's request for information about the Vehicle.

51.     The relevant statutes and ordinances do not set any deadline for Oberlin to notify lienholders of towed vehicles.

52.     On information and belief, Oberlin has no procedure for ensuring that notification to interested parties of towed vehicles is completed in a timely manner, such that excessive fees for storage of a vehicle do not accrue for extended periods of time.

53.     On information and belief, Oberlin has no procedure to ensure that towed vehicles are immediately released to lienholders following notification of an impounded vehicle, such as the notification sent in the Oberlin PD Letter of January 31, 2023.

54.     Oberlin has no procedure for affording the holder of a security interest and/or lien in a seized vehicle the opportunity to be heard before or after the time when Oberlin authorizes

and/or directs the seizure and detention of a vehicle which was taken into custody by Oberlin.

55.    The lack of statutory safeguards for Due Process will continue to harm LorMet and other lienholders with security interests in vehicles in Oberlin by subjecting them to unreasonable seizures and excessive fees without constitutionally adequate notice or a hearing before a neutral decision-maker to challenge the seizure, detention, or disposal of the affected vehicle, or the reasonableness of fees charged by towing companies like Vaughn's Towing.

**B.    The Statutory Scheme for Impounding Vehicles Fails to Provide Lienholders Adequate Safeguards to Protect their Property Interests or Seek Recourse for Violations of the Statutory Scheme.**

56.    On information and belief, the City contracts with Vaughn's Towing to tow and store vehicles at the direction of the City pursuant to the Oberlin Ordinances and the Ohio Revised Code.

57.    The Oberlin Ordinances permit vehicles to be towed if they are left on private property or on a public street without permission from the property owner or without notification to the Chief of Police.  Specifically, Oberlin Ordinance § 303.09 provides:

> No person shall leave any motor vehicle, other than an abandoned junk motor vehicle, as defined in Ohio R.C. 4513, on private residential or private agricultural property for more than four hours without the permission of the person having the right to the possession of the property, or on a public street or other property open to the public for purposes of vehicular travel, or upon or within the right of way of any road or highway, for forty-eight hours or longer, without notification to the Chief of Police of the reasons for leaving the motor vehicle in such place.

Oberlin Ordinance § 303.09(a).  This ordinance applies to vehicles that are abandoned on both public and private property.

58.    This ordinance does not expressly limit the towing and storage fees that may be charged.

59.     Oberlin Ordinance § 303.09 is the municipal analog to O.R.C. §§ 4513.60 and 4513.61.

60.     O.R.C. § 4513.60(A) provides that:

> [t]he sheriff of a county or chief of police of a municipal corporation … within the sheriff's or chief's respective territorial jurisdiction, upon complaint of any person adversely affected, [may] order into storage any motor vehicle … that has been left on private residential or private agricultural property for at least four hours without the permission of the person having the right to the possession of the property."

61.     O.R.C. § 4513.60 further provides that "[n]o towing or storage facility shall fail to comply with the requirements of this section."  O.R.C. § 4513(E)(2).

62.     O.R.C. § 4513.60 expressly limits the fees that a towing service such as Vaughn's Towing may charge to those fees established by PUCO pursuant to O.R.C. § 4921.25.  *See* O.R.C. § 4513.60(D)(1)(a) (providing that the owner or lienholder of a vehicle ordered into storage may reclaim it upon "[p]ayment of all applicable fees established by the public utilities commission in rules adopted under section 4921.25 of the Revised Code or, if the vehicle was towed within a municipal corporation that has established fees for vehicle removal and storage, payment of all applicable fees established by the municipal corporation" and presentation of proof of ownership).

63.     O.R.C. § 4921.25 requires PUCO to "establish maximum fees that may be charged by a for-hire motor carrier engaged in the towing of motor vehicles or a storage facility that accepts such vehicles under section 4513.60[.]"  O.R.C. § 4921.25 (B)(4).

64.     Pursuant to O.R.C. § 4921.25, OAC § 4901:2-24-03 requires that "any fee for the removal of the motor vehicle charged by a towing service … shall … in no instance … exceed **one hundred twenty-nine dollars**" and "any fee for the storage of the vehicle … shall … in no instance … exceed **seventeen dollars per day**."  OAC §§ 4901:2-24-03(A)(1) and (B)(1) (emphasis added).O.R.C. § 4513.61(A) authorizes police officers to order into storage vehicles

"left on a public street or other property open to the public[.]"  Unlike O.R.C. § 4513.60, O.R.C. § 4513.61 does not explicitly limit the fees that a towing service such as Vaughn's Towing may charge to those fees established by PUCO pursuant to O.R.C. § 4921.25.

65.     On information and belief, Defendants rely on O.R.C. § 4513.61 as the purported basis for authorizing Vaughn's Towing to charge a towing fee that far exceeds "one hundred twenty-nine dollars" and storage fees that far exceed "seventeen dollars per day," as set forth in OAC §§ 4901:2-24-03(A)(1) and (B)(1).

66.     Specifically, Vaughn's Towing has demanded that LorMet pay $375 for the removal of the Vehicle, and a storage fee of $50 per day—nearly three times the amounts that PUCO has established as the reasonable *maximum* fees to be charged.

67.     O.R.C. § 4513.61(C)(1) requires the sheriff or chief of police who directs the towing of a vehicle pursuant to that provision to "cause a search to be made . . . to ascertain the identity of the owner and any lienholder of a motor vehicle ordered into storage … within five business days of the removal of the vehicle."

68.     O.R.C. § 4513.61(C)(1), however, does not provide any deadline by when the sheriff or chief of police must "send or cause *notice* to be sent to the owner or lienholder," and Oberlin's practice is to send such notices months after the vehicle is ordered into storage.  As such, the statute effectively authorizes unreasonably excessive storage fees to accrue for an indefinite period of time.

69.     O.R.C. § 4513.61(C)(1) further authorizes state actors and towing companies like Defendants to dispose of such vehicles, thereby extinguishing the lienholder's security interest and/or lien, unless the lienholder pays the uncapped storage and towing fees charged by the towing company that towed and stored the vehicle at the direction of the sheriff or chief of police.

Therefore, the statute, and Defendants' policies and practices, authorize Vaughn's Towing's unreasonably excessive fees to accrue for an indefinite period of time, and further authorizes Defendants to dispose of vehicles and extinguish a lienholder's property interest unless the lienholder pays those unreasonable, excessive fees.

70. The applicable statutory scheme  has no procedure for promptly notifying a lienholder that a vehicle in which it holds a security interest or lien has been seized and is being stored pursuant to O.R.C. § 4513.61 and/or that unreasonable, excessive, and uncapped storage fees are accruing.

71. Oberlin has no procedure for promptly notifying a lienholder that a vehicle in which it holds a security interest or lien has been seized and is being stored pursuant to O.R.C. § 4513.61 and/or that unreasonable, excessive, and uncapped storage fees are accruing.

72. The applicable statutory scheme has no procedure for providing constitutionally adequate notice at any time to the holder of a security interest or lien in a seized vehicle that a vehicle in which it holds a security interest or lien has been seized and is being stored pursuant to O.R.C. § 4513.61 and/or that unreasonable, excessive, and uncapped storage fees are accruing.

73. Oberlin has no procedure for providing constitutionally adequate notice at any time to the holder of a security interest or lien in a seized vehicle that a vehicle in which it holds a security interest or lien has been seized and is being stored pursuant to O.R.C. § 4513.61 and/or that unreasonable, excessive, and uncapped storage fees are accruing.

74. The applicable statutory scheme has no procedure for affording the holder of a security interest or lien in a seized vehicle the opportunity to be heard either before or after the time when the seizure, detention, and accrual of unreasonable and excessive storage fees occurs with respect to any aspect of the vehicle's seizure or the reasonableness of the towing and storage

fees.

75.     Oberlin has no procedure for affording the holder of a security interest or lien in a seized vehicle the opportunity to be heard either before or after the time when the seizure, detention, and accrual of unreasonable and excessive storage fees occurs with respect to any aspect of the vehicle's seizure or the reasonableness of the towing and storage fees.

76.     As such, the applicable statutory scheme, Oberlin Ordinances, and Oberlin's policies and practices, including its authorization of Vaughn's Towing to detain vehicles and threaten their disposal unless the lienholder pays unreasonable and excessive fees, violate LorMet's and all lienholders' rights to Due Process under the law and to be free from unreasonable seizures.

77.     LorMet and other lienholders will continue to suffer Due Process violations each time Oberlin directs Vaughn's Towing to tow a vehicle without providing constitutionally adequate notice and an opportunity to be heard, and each time LorMet is forced to choose between paying unreasonable, excessive fees or having its security interests and/or liens in vehicles seized and towed by Defendants extinguished.  .

78.     O.R.C. §§ 4531.60(D)(1) and 4531.61(C)(2) require a towing or storage service to release a stored vehicle upon an owner or lienholder's payment of applicable fees and presentation of proof of ownership.

79.     No court order is required to reclaim a towed vehicle under the Ohio Revised Code. O.R.C. § 4513.611 provides that "[a] vehicle owner may bring a civil action in a court of competent jurisdiction against a towing service or storage facility that commits a major or minor violation" of the statutory towing scheme.  O.R.C. § 4513.611(B)(1).

80.     An insurance company may also sue a towing service:  "An insurance company

may commence a civil action against a towing service or storage facility on its own behalf, on behalf of the holder of a policy of automobile insurance, or on behalf of a motor vehicle owner" to recover a vehicle that has been towed and for which a claim has been filed with the insurance company, and to object to the amount charged by the towing service.  O.R.C. § 4513.70(A)(1).

81.    The statutory scheme, however, affords no such right to lienholders like LorMet.

82.    Lienholders who hold a security interest in vehicles, such as LorMet, have no similar right to a private cause of action.

83.    The lack of recourse under the statute has caused, and will continue to cause, harm to LorMet and other lienholders because they do not and will not have any means of enforcing their constitutionally protected security interests and/or liens in towed vehicles, while owners and insurance companies do have such recourse under the Ohio Revised Code.

84.    The exclusion of lienholders from the categories of persons who have a private right of action under O.R.C. § 4513.60, *et seq*., is not rationally related to any legitimate state interest. As such, the statutory scheme, and any actions taken pursuant to it by Defendants, will result in continuing violations of LorMet's constitutional rights.

85.    These constitutional violations are the result of official policy or policies of Defendants.

86.     Thus, the statutory scheme also denies LorMet equal protection under the law, in violation of the Equal Protection Clause of the Fourteenth Amendment.

### CLAIMS FOR RELIEF

### COUNT ONE
### (Deprivation of Property by Unreasonable Seizure *and* Without Due Process of Law in Violation of the Fourth and Fourteenth Amendments Pursuant to 42 U.S.C. § 1983)

87.    LorMet relies upon and incorporates by reference all preceding paragraphs.

17

88.     LorMet, pursuant to the Loan and Security Agreement, is a lienholder in the Vehicle that possesses a duly perfected security interest and lien in the Vehicle.

89.     LorMet also possesses a property interest in the nearly $5,000 in fees that Defendants are demanding from LorMet in order to prevent them from disposing of the Vehicle thereby extinguishing its security interest and lien.

90.     Defendants acted under color of state law to carry out an unreasonable seizure of the Vehicle and to deprive LorMet of its property interest in the Vehicle without due process of law.

91.     The City authorized and directed Vaughn's Towing to impound the Vehicle pursuant to Oberlin Ordinance § 303.09, O.R.C. § 4513.60 and/or § 4513.61; refused to provide information upon LorMet's request relevant to reclaiming the Vehicle; and refused to release, or authorize the release, of the Vehicle to LorMet, and Vaughn's Towing continues to refuse to release the Vehicle unless LorMet pays its unreasonable and excessive towing and storage fees.

92.     The City further failed to adequately and timely notify LorMet that the Vehicle had been impounded; failed to assist LorMet by answering reasonable requests for additional information to reclaim the Vehicle; and failed to provide LorMet constitutionally adequate notice or an opportunity to be heard regarding the seizure of the Vehicle, the timeliness of the letter informing it of the seizure, the reasonableness of the fees, or the threat to dispose of the Vehicle and extinguish its security interest and lien.

93.     Vaughn's Towing impounded the Vehicle at the direction of the City pursuant to Oberlin Ordinance § 303.09, and O.R.C. § 4513.60 and/or § 4513.61; failed to timely inform LorMet that the Vehicle had been impounded; refused to return the Vehicle to LorMet; and conditioned the return of the Vehicle on the payment of unlawfully excessive towing and storage

fees, threatening to destroy LorMet's constitutionally protected security interest in the Vehicle unless it pays such unreasonable excessive fees.

94.     Defendants have deprived LorMet of its property interest in the Vehicle, and will continue to deprive LorMet of its property interests in other vehicles in which it is a lienholder, without affording LorMet constitutionally adequate notice and an opportunity to be heard before a neutral decision-maker.

95.     These constitutional violations, including Defendants' failure to provide constitutionally adequate notice or a prompt, impartial review of the seizure, detention, accrual of storage fees, and excessive amounts of such fees are the result of the official policies and practices of Defendants.

96.     Defendants do not maintain any procedural mechanism for providing a notice of seizure to lienholders after a vehicle is seized, and maintains no procedural mechanism for providing hearings to parties holding security interests or liens in such seized vehicles and who are subjected to unreasonable and excessive towing charges.

97.     Because the relevant statutes and ordinance, and Defendants' policies and practices, fail to set forth any deadline by when lienholders must be notified that a vehicle in which they hold a security interest or lien has been seized, do not limit the towing and storage fees that may be charged for an impounded vehicle, and have no procedure for affording lienholders constitutionally adequate notice and an opportunity to be heard, they sanction these constitutional violations.

98.     But for Defendants' policy, decisions, practices, and failures above described, LorMet would have had the right to recover and would have recovered the Vehicle without delay or with minimal delay by reason of measures that preserve legitimate interests but are less intrusive

than continued detention or disposal of the vehicle, and extinguishment of LorMet's lien, and without incurring liability for or loss due to unreasonable and excessive towing and storage charges assessed *ex parte,* and without incurring liability for or loss due to further storage charges continually accruing daily, and without the imminent threat of loss by extinguishment of its lien in the Vehicle.

99.     Accordingly, Defendants have violated LorMet's right to be free from unreasonable seizures in violation of the Fourth Amendment to the U.S. Constitution, and the right to Due Process in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

100.    As a direct and proximate result of Defendants' violation of LorMet's rights under the Fourth and Fourteenth Amendments to the United States Constitution LorMet has suffered general and special monetary damages based upon the lost value of the Vehicle, the income stream due to LorMet relative thereto and the sales proceeds and is entitled to relief under 42 U.S.C. §1983 and 42 U.S.C. 1988.

**COUNT TWO**
**(Violation of Art. I, § 16 of the Ohio Constitution – Due Process)**

101.    LorMet relies upon and incorporates by reference all preceding paragraphs.

102.    Article I, Section 16 of the Ohio Constitution requires that every person be afforded the right to "remedy by due course of law."

103.    As set forth above, Defendants have deprived and will continue to deprive LorMet of its property interest in its vehicles without affording LorMet an opportunity to be heard before a neutral decision-maker.

104.    Accordingly, Defendants have violated the right to Due Process in violation of Article I, Section 16 of the Ohio Constitution.

## COUNT THREE
### (Violation of the Fourteenth Amendment Right to Equal Protection Pursuant to 42 U.S.C. § 1983)

105.    LorMet relies upon and incorporates by reference all preceding paragraphs.

106.    As established by the facts and circumstances alleged in this complaint, the statutory towing scheme—specifically O.R.C. § 4513.611 (providing owners of vehicles with a right to challenge violations of the towing statutes) and O.R.C. § 4513.70 (same with respect to insurance companies)—treats lienholders differently from similarly situated parties who have constitutionally protected interests in vehicles, specifically by not granting lienholders the right to pursue a cause of action to challenge unreasonable towing and storage fees.

107.    The exclusion of lienholders from the categories of persons who have a private right of action under O.R.C. § 4513.60 *et seq*. is not rationally related to any legitimate state interest. As such, the statutory scheme, and any actions taken pursuant to it by Defendants, will result in continuing violations of LorMet's constitutional rights.

108.    As such, the enforcement and implementation of the statutory towing scheme as-is, and any actions taken pursuant to it, will result in continuing violations of LorMet's constitutional rights.

109.    These constitutional violations are the result of official policies and practices of Defendants.

110.    Thus, the statutory towing scheme denies LorMet the Equal Protection of the laws, in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

## COUNT FOUR
### (Conversion under Ohio Law)
### (as against Vaughn's Towing)

111.    LorMet relies upon and incorporates by reference all preceding paragraphs.

112.    The Oberlin PD Letter indicated that the "lien holder of the motor vehicle may reclaim same upon payment of expenses incurred in its removal and storage along with presentation of ownership which maybe [*sic*] evidenced by a certificated of title and/or registration to the vehicle."

113.    Vaughn's Towing exercised unlawful dominion and control of the Vehicle to the exclusion of LorMet's rights when it detained the Vehicle and refused to return possession of the Vehicle to LorMet on or about February 2, 2023 without further authorization from the Oberlin PD.

114.    Vaughn's Towing continues to exercise unlawful dominion and control of the Vehicle to the exclusion of LorMet's rights when it detained the Vehicle and refused to return possession of the Vehicle to LorMet even after the Lorain County Court of Common Pleas entered an order granting LorMet's Motion for Immediate Release of the Vehicle without payment of its unreasonable and excessive fees.

115.    Vaughn's Towing's acts of conversion as alleged have caused LorMet to incur actual damages in addition to additional attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, LorMet requests that the Court:

(a)    Grant judgment in favor of LorMet and against Defendants on all causes of action asserted herein;

(b)    Declare that Defendants violated LorMet's rights to be free from unreasonable seizures under the United States Constitution;

(c)    Declare that Defendants violated LorMet's rights to Equal Protection under the United States Constitution and to Due Process under the United States and Ohio Constitutions;

(d)    Declare that the statutory towing scheme under the O.R.C. is unconstitutional because it fails to include provisions that require *timely* notice to owners and lienholders of vehicle impoundment, fails to require

an opportunity to be heard before a neutral decision-maker, in violation of the right to Due Process, and fails to limit the amount of storage and towing fees that a towing company may demand from a lienholder;

(e)   Preliminarily and permanently enjoin Defendants and all those acting in concert with them from engaging in the unconstitutional practices of:

    (i)   failing to provide adequate and timely notice to all parties with an interest in an impounded vehicles that the vehicle has been impounded and that they have an opportunity for a hearing;

    (ii)   failing to provide notice to all parties with an interest in an impounded vehicle an opportunity to be heard on the validity of the City's seizure of the vehicle, its continued detention, and the amount of fees owed; and

    (iii)   conditioning the return of impounded vehicles upon payment of uncapped towing and storage fees.

(f)   Award LorMet nominal and actual damages, including damages based upon the lost value of the Vehicle, the loss of use thereof, and/or the income stream due to LorMet relative thereto;

(g)   Require Vaughn's Towing to immediately release the Vehicle to LorMet and prevent Defendants from disposing of or extinguishing LorMet's security interest in the Vehicle;

(h)   Award LorMet its reasonable attorneys' fees, costs, and other disbursements in this action pursuant to 42 U.S.C. § 1988; and

(i)   Award any additional relief in LorMet's favor to which it is justly and equitably entitled.

Respectfully submitted,

*/s/ Daniela Paez*
Frances Floriano Goins (0018631)
Daniela Paez (0091212)
Lauren K. Garretson (0100315)
ULMER & BERNE LLP
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113-1448
216-583-7000
Fax: 216-583-7001
fgoins@ulmer.com
dpaez@ulmer.com
lgarretson@ulmer.com

*Attorneys for LorMet Community Federal Credit Union*